NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

DARA COOLEY,                              )
                                          )
        Appellant,                        )
                                          )
v.                                        )        Case No.  2D16-5614
                                          )
CHRISTOPHER COOLEY,                       )
                                          )
        Appellee.                         )
                                          )
_____ )

Opinion filed August 24, 2018.

Appeal from the Circuit Court for
Hillsborough County; Robert A. Bauman,
Judge.

Ceci Culpepper Berman and Joseph T.
Eagleton of Brannock & Humphries, Tampa,
for Appellant.

Paul S. Maney of Paul S. Maney, P.A.,
Tampa, for Appellee.


SILBERMAN, Judge.

        Dara Cooley (the Former Wife) appeals a final judgment of dissolution of

marriage in her short-term marriage to Christopher Cooley (the Former Husband) and

challenges the unequal equitable distribution of assets and liabilities.  We affirm the final

judgment to the extent that it dissolves the marriage.  We reverse the unequal equitable

distribution scheme and remand for the trial court to effectuate an equal equitable distribution.

The parties were married on August 3, 2008, and separated on December 1, 2012. No children were born of the marriage. The Former Wife filed a petition for dissolution of marriage on September 26, 2014, and the Former Husband subsequently filed a counterpetition. In addition to requesting an equitable distribution of marital assets and liabilities, both the petition and counterpetition sought partition of the marital home, requesting that the property be sold and that the proceeds be divided equally.

The case was tried in September 2015. The issue before the trial court was an equitable distribution of the parties' marital assets and liabilities. The Former Wife sought an equal distribution while the Former Husband sought an unequal distribution in his favor.

Prior to the marriage, the Former Wife worked as a teacher, earning approximately $40,000 per year. She enrolled in law school in January 2008, about eight months before the parties married. The parties had lived together before the marriage, and the Former Husband supported the Former Wife's decision to attend law school, viewing it as a long-term investment for their future. In October 2009, the parties purchased the marital home for $181,649.

The parties' income decreased significantly while the Former Wife was attending law school. At that time the Former Husband had a "good, stable job" with the county and was earning about $50,000 per year, although he testified that he put on hold "any other advancement or risk-taking" that would have furthered his career while the Former Wife was in law school. The Former Wife earned some income while she

was a law student, including approximately $30,000 one year as a summer associate with a law firm.

During the marriage, the Former Wife took out student loans of $76,400 and the parties used joint funds to pay off the Former Husband's student loans that he incurred prior to the marriage. The parties stipulated that as of the date of separation the principal and interest on the Former Wife's student loans was $91,362.11. The Former Wife testified that excess loan funds were deposited into the parties' joint account and were used for living expenses. The Former Husband acknowledged that excess loan funds "probably did go into some regular living expenses."

The Former Wife graduated from law school in December 2010 and was admitted to The Florida Bar in April 2011. She initially took a job as a staff attorney with the circuit court at an annual salary of about $40,000. In July 2012, she took a job with a private law firm, and by the time of trial she had taken a position with another law firm and was earning approximately $100,000 per year. She opened her own bank account just before she moved to her own apartment in August 2012.

In May of 2015, the Former Husband was earning about $64,000 per year. Because he had "worked [his] way up," he had a "great opportunity" to move to a new position that increased his salary to $112,000 per year. He remained in the marital home and paid the expenses associated with the home.

The parties agreed to use the date of separation, December 1, 2012, for valuation of most marital assets and liabilities, though they did not agree as to the date of valuation of the marital home and how appreciation of the home should be allocated.

Thus, the primary issue before the court was the distribution of assets and liabilities and whether an unequal distribution would be justified.

In the final judgment entered on September 9, 2016, the trial court assessed the factors in section 61.075, Florida Statutes (2014), and awarded the Former Husband an unequal distribution. Despite the fact that both the credit card debt and the Former Wife's student loan debt were incurred during the marriage, the final judgment made the Former Wife responsible for the entirety of these debts. The trial court valued the home on the date of separation at $175,000, found that it had appreciated from the separation date to the trial date in the amount of $17,000, and determined that the Former Husband was entitled to the full appreciation. The trial court assigned the entire mortgage debt to the Former Husband but gave him credits for payments he made on the mortgage and other home expenses. The final judgment did not address the legal status of the marital home going forward.

Under the equal equitable distribution plan that the Former Wife proposed, the Former Husband would have been required to make an equalizing payment of $81,062.61 to the Former Wife. However, because the trial court awarded the Former Husband an unequal distribution, the court ordered the Former Wife to make "an adjusted equalizing payment" of $11,563.73 to the Former Husband. On appeal, the Former Wife primarily challenges the unequal distribution of marital assets and liabilities.

Our review of the trial court's distribution of marital assets and liabilities is for an abuse of discretion. Witt v. Witt, 74 So. 3d 1127, 1129 (Fla. 2d DCA 2011). The equitable distribution statute begins with the premise that the distribution should be

equal, see § 61.075(1), but the trial court may make an unequal distribution when proper justification is demonstrated, Rogers v. Rogers, 12 So. 3d 288, 291 (Fla. 2d DCA 2009). Section 61.075(1) sets forth factors for the trial court to consider in making this determination, and the court must support its equitable distribution scheme with specific factual findings. See § 61.075(3); Witt, 74 So. 3d at 1129. The factual findings must be "based on competent substantial evidence with reference to the factors enumerated in subsection (1)." § 61.075(3).

The trial court recited the factors of section 61.075(1) and made various findings. The main factors the court used to support the unequal distribution were the contribution to the marriage by each spouse, the economic circumstances of the parties, the duration of the marriage, and the interruption of personal careers. See § 61.075(1)(a)-(d).

With respect to the contribution to the marriage, the trial court found that the Former Husband supported the Former Wife emotionally and financially in her career pursuit and that he was the primary income source. The fact that the Former Husband was the primary source of income does not support an unequal distribution. When one spouse is the primary wage earner and makes a significant contribution to the marital assets, it "does not justify disparate treatment." Horne v. Horne, 711 So. 2d 1310, 1312 (Fla. 1st DCA 1998). Further, it was undisputed that the Former Wife had earnings as a research assistant and one year earned approximately $30,000 as a summer associate at a law firm.

The trial court also found that the Former Husband contributed to the marriage by providing "substantial care for his handicapped sister-in-law while the Wife

was in law school." Although the Former Wife does not dispute that the Former Husband helped care for her sister, his testimony was that he cared for his sister-in-law when the Former Wife or her mother was not available. There was no evidence that his assistance affected his career or the parties' financial situation.

With respect to the economic circumstances of the parties, the trial court found that their income significantly decreased when the Former Wife was in law school and again stated that the Former Husband primarily supported the parties. The court found "no demonstrable evidence whether the overage student loan funds were deposited into the joint account." Although specific amounts were not presented to the court, the Former Wife testified that excess student loan money went into the parties' joint account for living expenses, and the Former Husband did not dispute this; rather, he acknowledged that excess amounts "probably did go into some regular living expenses."

The trial court also found that just prior to the separation the Former Wife began to earn a salary significantly higher than she had ever earned and kept those wages to herself by opening her own bank account. The court recognized that the parties agreed to use the separation date to value all marital assets and liabilities other than the home and noted that the Former Husband paid the majority of marital expenses for several months before the separation date and for about three months after separation.

With respect to the duration of the marriage, the trial court recognized that this was a short-term marriage and stated that "a significant amount of debt was incurred" during the marriage. The parties do not dispute that the student loan debt

incurred during the marriage is a marital liability. See Rogers, 12 So. 3d at 291. The trial court acknowledged that under the applicable law, "[t]he fact that one party will not receive any benefit from the other party's education because of the dissolution is not a factor to be considered when allocating a marital debt for student loans." See id.; Smith v. Smith, 934 So. 2d 636, 641 (Fla. 2d DCA 2006). Yet the court also stated that "[f]or the Husband to now be burdened with such a large amount of debt, from which he did not benefit from the time the debt was incurred, is not equitable."

With respect to interruption of personal careers, the trial court found that the Former Husband delayed pursuing advancement opportunities due to the reduced household income and that the parties chose not to take additional financial risks. But the Former Husband's testimony also showed that he suffered no financial harm. He worked his way up with the county and then had a "great opportunity" with the Port of Tampa. He nearly doubled his salary to $112,000 per year by May of 2015.

The trial court found that there were no allegations of waste or dissipation of martial assets, see § 61.075(1)(i), but the court stated that the Former Wife "failed to account for her expenditures of her income after the filing of the petition." Because the assets and liabilities were valued on the date of separation, this finding is irrelevant to whether an unequal distribution is warranted. Further, under the catch-all factor, see § 61.075(1)(j), the trial court found that after the Former Wife was earning a significant income, she took vacations in the United States "rather than pay down her massive student loan debt" and that she "incurred unnecessary credit card debt." Yet the evidence established that the Former Wife was making payments on the student loan and credit card debt. Moreover, because the parties agreed to value the liabilities, apart

- 7 -

from the home, as of the date of separation, any expenses the Former Wife incurred after separation are irrelevant to the equitable distribution. Indeed, the Former Wife points out that she is not asking the Former Husband to pay for her credit card charges made after separation.

To support an unequal distribution, the trial court stated that "a lengthy separation is a legally sufficient justification for a court's disparate treatment of marital assets," quoting Heslop v. Moore, 716 So. 2d 276, 278 (Fla. 3d DCA 1998). In Heslop, the appellate court reversed a temporary injunction that prevented lottery winnings from being distributed for the benefit of the former wife. Id. at 277. The court suggested that in a situation where the parties had been separated for over five years and during the separation the former wife had won a $28.52 million lottery prize, the former wife may be entitled to an unequal distribution. See id. at 277-78.

The trial court also relied on Boyle v. Boyle, 30 So. 3d 665 (Fla. 5th DCA 2010), and referred to it as factually similar to the present case. There, the parties had been married for twenty-five years and had an almost six-year-long separation in which they had separate households. Id. at 665-66. The trial court used the filing date to identify marital assets but adjusted the distribution to account for the assets and debts accumulated during the separation when the parties lived separate lives. Id.

Here, the parties were married for eight years and separated after four years. The petition for dissolution was filed less than two years after the separation date. Significantly, the parties agreed to use the date of separation for identifying and valuing nearly all of the marital assets and liabilities. Although they did not agree to the valuation date for the marital home, the trial court chose to use the date of separation

for that asset as well. Under these circumstances, there was no need for an unequal distribution based on the parties living separate lives when the trial court used the separation date rather than the filing date for valuation.

In reviewing the evidence and the trial court's findings, we conclude that the trial court's decision to make an unequal distribution, particularly one in which the Former Wife is saddled with all the marital student loan and credit card debt, must be reversed. While the trial court addressed various factors in its decision, looked at as a whole, the evidence does not support an unequal equitable distribution. We recognize that the trial court was concerned regarding the Former Wife's student loan debt. Indeed, the trial court correctly recognized that the loans are marital debt. The court also correctly noted that under the law the fact that the Former Husband would not benefit from the Former Wife's education, which was obtained with the assistance of the loans, is not a factor to be considered. Despite this, the court found that it was inequitable for the Former Husband to "be burdened with such a large amount of debt, from which he did not benefit." Because we conclude that an unequal distribution is not supportable, we reverse the unequal distribution and remand for the trial court to effectuate an equal equitable distribution as is contemplated by section 61.075(1).

For purposes of remand, the trial court shall use the values as of the date of separation to which the parties agreed. With respect to the marital home, we note that the Former Husband is entitled to credits for the payments he made of the Former Wife's share of the expenses, that is, one half of the total expenses. He is responsible for the other half of the expenses. Finally, although the parties sought partition of the

marital home, the trial court did not address the legal status of the home and must address this on remand.

Affirmed in part, reversed in part, and remanded.


LaROSE, C.J., and ROTHSTEIN-YOUAKIM, J., Concur.