NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

RAMESH GUDUR, )
)
      Appellant, )
)
v. )    Case No. 2D16-3127
)
KAVITHA GUDUR, )
)
      Appellee. )
_____)

Opinion filed June 28, 2019.

Appeal from the Circuit Court for Collier
County; Mary C. Evans, Judge.

Allison M. Perry of Florida Appeals, P.A.,
Tampa; and Cary A. Cliff of Cary Alan Cliff,
P.A., Naples, for Appellant.

Cynthia L. Greene of Cynthia L. Greene,
P.A., of counsel, Young, Berman, Karpf &
Gonzalez, P.A., Miami; and Jeffrey C.
Quinn, Naples, for Appellee.

SILBERMAN, Judge.

      Ramesh Gudur (the Former Husband) appeals an amended final

judgment of dissolution of marriage (the Judgment). He challenges the equitable

distribution, the alimony that Kavitha Gudur (the Former Wife) was ordered to pay, and

the denial of his request for an award of attorney's fees, raising five issues. We affirm to

the extent that the Judgment dissolves the parties' marriage. We also affirm regarding the Former Husband's debt to Deloitte and Touche because the Former Husband has shown no entitlement to relief. However, we reverse the equitable distribution and remand for the trial court to reconsider the distribution of the Former Wife's interest in a medical building and the Former Husband's student loans incurred during the marriage. After the trial court reconsiders the equitable distribution, it must also reconsider the alimony award to the Former Husband and his request for attorney's fees.

The parties were married in January 1998. They have one daughter who was a minor at the time of trial but who has since reached the age of majority. The Former Wife filed the petition for dissolution of marriage on October 10, 2012. Their marriage of over fourteen years is of moderate duration. See § 61.08(4), Fla. Stat. (2012). At the time of trial, the Former Wife was forty-six years old, and the Former Husband was sixty years old.

The Former Wife was a medical student and moved to the United States from India after the parties married. They lived in Houston, Texas, where the Former Husband was working and attending law school. In 2000, after the Former Husband was fired from his job, the parties moved to Brooklyn, New York, for the Former Wife to complete her internal medicine residency. During the period of 2000-2003, the Former Husband did not work continuously and was unemployed for about eighteen months. After the Former Wife completed her residency, the parties moved to Florida.

The Former Wife practiced as an internist with the Naples Medical Center. She has a 6.4% ownership interest in Naples Medical & Professional Center, Inc., which owns the building that formerly housed the Naples Medical Center. By the time of trial,

the Former Wife was working for herself at Wellness Dimensions, LLC, and at a chemical dependency rehabilitation facility. Based on the evidence presented, including her expert's testimony, the trial court determined that her gross monthly income was $31,600 per month. Her net monthly income, as shown on the child support guidelines worksheet, was $17,322.22.

The Former Husband had an MBA degree when the parties married, and he completed law school in July 1999. When the parties moved to Florida, he first worked as an attorney for the Florida Department of Health. Later, he obtained employment as an assistant public defender in Naples. He worked there for seven and a half years until he resigned in September 2011. The Former Husband had taught college classes as an adjunct in the past, and he entered a Ph.D. program so that he could work as a professor. He was terminated from the Ph.D. program in 2013. The Former Husband remained unemployed at the time the trial concluded in November 2015.

The Former Husband was making close to $50,000 per year when he left his employment as an assistant public defender. At trial, the Former Wife presented a vocational rehabilitation and career counselor who evaluated the Former Husband and testified regarding the Former Husband's job search and earning potential.

The trial court ordered an equitable distribution that awarded each party $361,194. The court did not find the Former Husband's testimony regarding his job search credible and imputed income of $3000 per month to the Former Husband. The court awarded to the Former Husband durational alimony for seven years of $5000 per month and denied the Former Husband's request for attorney's fees.

## I. EQUITABLE DISTRIBUTION

The trial court made an equitable distribution that awarded $361,194 to each party. Thus, in accordance with the premise of section 61.075(1), the trial court sought to equally distribute the marital assets and liabilities. We conduct a de novo review of the "trial court's characterization of an asset as marital or nonmarital" but review for competent substantial evidence the "factual findings necessary to make this legal conclusion." Dravis v. Dravis, 170 So. 3d 849, 852 (Fla. 2d DCA 2015). We also review the trial court's valuation of marital assets for competent substantial evidence to support the valuation. Id. at 853. The trial court's distribution of the marital assets and liabilities is reviewed for an abuse of discretion. Cooley v. Cooley, 253 So. 3d 1223, 1226 (Fla. 2d DCA 2018). Here, the distribution of one asset and one liability that the Former Husband contests requires that we reverse the equitable distribution and remand for further proceedings.

### A. Interest of 6.4% in Naples Medical & Professional Center, Inc.

The Former Wife owns a minority interest of 6.4% in Naples Medical & Professional Center, Inc. She presented competent substantial evidence of the value of her minority interest via expert testimony. The expert, taking into account the minority interest, employed a discount for a lack of control and lack of marketability and determined the value of the Former Wife's 6.4% interest to be $380,000. The trial court distributed the asset as follows:

> The Wife's approximate 6.4% ownership in Naples Medical & Professional Center, Inc. is a marital asset that is split equally between the parties. The corresponding liability is shown as the Wife's responsibility because it will be her responsibility whether she makes payments now or whether the amount is deducted from her share at a future sale. The Husband received less distribution

from the Wife's Millennium Physician's 401k to make up for not being responsible for the repayment of the NM&PC liability. The Husband shall be distributed $190,000.00 upon the Wife's receiving her approximate 6.4% share of NM&PC. The Wife is not responsible for paying the Husband his share unless and until her approximate 6.4% is turned into cash funds or is otherwise liquidated. If any cash calls occur and the Wife is required to remit maintenance funds, she shall remit 100% of the amount called for and she shall receive a credit for one-half of those amounts from the $190,000.00 to be distributed to the Husband pursuant to this order. Should the Wife's approximate 6.4% share be valued at less than $380,000.00 at the time it is turned into cash funds or is otherwise liquidated, the Husband's share shall be reduced to one-half that amount. Should the Wife's approximate 6.4% share be valued at more than $380,000.00 at the time it is turned into cash funds or is otherwise liquidated, the Husband's share is capped at $190,000.

(Emphasis added.) Thus, the Former Wife is not required to pay the Former Husband for his portion of this substantial asset at any specific time. The Former Husband contends that the trial court abused its discretion in awarding to him his $190,000 share at an indefinite time in the future. We agree.

The Former Husband relies primarily upon Thomas-Nance v. Nance, 189 So. 3d 1040 (Fla. 2d DCA 2016). In Nance, the husband was awarded the marital home and ordered to pay the wife her $25,000 share of the equity by way of an extended payment plan that allowed the Husband to pay $100 per month. Id. at 1041. This court determined that a payment plan requiring "the Wife to wait more than twenty years to receive her share of the marital assets" was "patently unreasonable" and constituted an abuse of discretion. Id. at 1042. Cf. Lopez v. Hernandez, 252 So. 3d 266, 267 (Fla. 4th DCA 2018) (distinguishing Nance and determining that there was no error on the face of a judgment that gave the wife fifty-five months to buy out the husband's interest in the marital home). Of course, a trial court may, in order to treat

the parties equitably, "order a monetary payment in lump sum or in installments paid over a fixed period of time." § 61.075(10).

The Former Wife contends that Scott v. Scott, 643 So. 2d 1124 (Fla. 4th DCA 1994), supports an affirmance on this issue. There, the husband owned a one-third interest in Pine Tree North, a property with apartment buildings on it. Id. at 1126. The parties had expended marital labor on the enterprise, and the wife had worked at the rental office on the property. As part of the equitable distribution, the trial court awarded to the wife a one-sixth interest in the property. Id. The Fourth District determined that the trial court did not abuse its discretion in that case but recognized that it "has frowned upon distribution schemes which have the effect of making disgruntled former mates business partners." Id. The Fourth District noted that due to the husband's substantial financial means, "on remand the trial court may wish to consider anew the wife's request that the husband make a cash distribution to her representing the value of her interest in Pine Tree North." Id. at 1127.

Here, unlike Scott, the Former Husband was not awarded an interest in the marital asset, Naples Medical and Professional Center, Inc., and he never took any part in that business. The trial court did not make the parties business partners. Rather, the Former Wife is not responsible to pay the Former Husband "his share unless and until her approximate 6.4% is turned into cash funds or is otherwise liquidated." It is possible that the 6.4% interest might not be sold during his lifetime. Furthermore, a postdissolution loss or gain in the value of a party's business is not marital in nature. See Silverman v. Silverman, 940 So. 2d 615, 617 (Fla. 2d DCA

2006). The trial court's plan allows the Former Wife to benefit from postdissolution gain but requires the Former Husband to share in postdissolution loss.

The Former Wife has 401(k) accounts totaling over $200,000 and a substantial net income of over $17,000 per month. Under these circumstances, we determine that it is patently unreasonable and an abuse of discretion to leave the payment of the $190,000 awarded to the Former Husband to an indefinite date in the future. Therefore, we reverse the equitable distribution and remand for reconsideration after the trial court refashions the distribution of this asset. Distribution of this asset could be accomplished by methods such as restructuring the equitable distribution to immediately pay the Former Husband, see Scott, 643 So. 2d at 1127, or establishing a payment plan for the Former Wife to pay the award within a reasonable time, including the consideration of statutory interest on the unpaid balance. See Nance, 189 So. 3d at 1042-43.

**B. Marital Student Loans**

The Former Husband took out student loans before the marriage, during the marriage, and after the petition for dissolution was filed. The parties agreed that student loans taken out during the marriage are a marital liability. But the Former Wife contended that the Former Husband failed to present competent substantial evidence regarding the balance of the marital student loans as of the valuation date of October 10, 2012.

The Former Husband introduced into evidence Exhibits 5 and 11, consisting of loan statements that reflected thirteen individual loans taken out during the

marriage. Some had been consolidated and showed a zero balance. The consolidation included nonmarital loans.

The Former Wife objected to the admission of the Former Husband's Exhibit 6 that contained his calculations to arrive at a total outstanding balance of the marital student loans, and the trial court allowed it only as a demonstrative exhibit. In fact, the Former Husband's counsel stated with reference to the demonstrative exhibit, "Mr. Gudur did his own calculations. Whether or not those are correct, we don't know." On cross-examination, the Former Husband was questioned about his method of calculation, the interest rates, and payments that had been made on the individual loans. The Former Wife contended that the Former Husband had failed in his burden of proof as to the valuation of the marital student loans.

The trial court attached to the Judgment the Former Husband's demonstrative exhibit that reflected a balance of $72,258.86 for the marital student loans. Also attached are the student loan statements that were admitted into evidence. The court, apparently relying on the demonstrative exhibit and rounding up slightly, found that the Former Husband had marital student loans totaling $72,259 but allocated that liability entirely to the Former Husband. In making that determination, the trial court found as follows:

> The Husband is being distributed all of his student loan debt because, although approximately $72,259.00 was incurred during the marriage, the benefit of the student loans inured entirely to the Husband and the expense is not one that benefitted the marriage or fulfilled a marital purpose given the Husband's few years practicing law and his failure to complete his doctoral studies.

- 8 -

The trial court erred because "[t]he fact that one party will not receive any benefit from the other party's education because of the dissolution is not a factor to be considered when allocating a marital debt for student loans." Rogers v. Rogers, 12 So. 3d 288, 291 (Fla. 2d DCA 2009); see also Cooley v. Cooley 253 So. 3d 1223, 1228 (Fla. 2d DCA 2018) (reversing equitable distribution where the wife was "saddled with all the marital student loan" debt when the trial court had found that the husband would not benefit from the wife's education). Furthermore, as to the law school loans, the evidence reflects that the Former Husband practiced law for over seven years, about half the length of the marriage.

Thus, on remand the trial court must reconsider the student loans incurred during the marriage. But before the trial court considers allocation of any marital student loans, the valuation must be supported by competent substantial evidence. See Dravis, 170 So. 3d at 853. A demonstrative aid does not constitute competent substantial evidence to support a valuation of a marital asset or liability. See Smith v. Smith, 934 So. 2d 636, 641 (Fla. 2d DCA 2006) ("A demonstrative aid together with argument does not provide an evidentiary basis for a finding as to valuation of a pension.") If the trial court's valuation was based on the Former Husband's demonstrative exhibit, competent substantial evidence does not support the trial court's finding of the value of the marital student loans.

The trial court also attached student loan statements to the Judgment and took judicial notice of the court file. We see no basis in the student loan statements to support a value of $72,259 on the valuation date of October 10, 2012. The statements reflect that some of the marital loans had a zero balance because they had been

- 9 -

consolidated. Other marital loans showed a balance as of May 19, 2015, more than two years after the valuation date, and an interest rate of 6.8%. The Former Husband had received deferrals, but he was unable to testify as to what payments had been made on the loans, although he made some payments while he was employed.

It is unclear whether the trial court relied on any other information contained in the judicially noticed court file, but we are unable to discern a basis for distribution of the student loans. If on remand for reconsideration of the equitable distribution the trial court can come to a valuation for the marital portion of the student loan debt based on competent substantial evidence of record, then the trial court should reconsider allocation of the marital student loan debt with appropriate findings supporting the distribution.

## II. ALIMONY AND ATTORNEY'S FEES ON REMAND

The Former Husband also challenges the durational alimony awarded to him for seven years of $5000 per month and the trial court's denial of his request for attorney's fees. Both of these issues will need to be reconsidered on remand in light of our reversing the equitable distribution.

The parties had a moderate-term marriage. See § 61.08(4) (establishing a "rebuttable presumption that . . . a moderate-term marriage is a marriage having a duration of greater than 7 years but less than 17 years"). Durational alimony "provide[s] a party with economic assistance for a set period of time following a marriage of short or moderate duration." § 61.08(7). An award of permanent alimony is permitted following a moderate-term marriage only "if such an award is appropriate based upon clear and

convincing evidence after consideration of the factors [for determining the type and amount of alimony] set forth in subsection (2)."  § 61.08(8).

We cannot agree with the Former Husband that the trial court abused its discretion in determining that durational alimony is appropriate under the circumstances here.  However, because we are remanding for a reconsideration of the equitable distribution, the trial court will also need to reconsider the type and amount of alimony to award.  See § 61.075(9) (requiring that the trial court first make its determination on equitable distribution and then determine whether to award alimony).

As to attorney's fees, the trial court ordered that "[e]ach party shall pay his/her own attorney's fees."  The trial court cannot deny a request for attorney's fees under section 61.16 without making findings as to one party's ability to pay an award of fees and the other party's need for the payment of fees.  Powers v. Powers, 193 So. 3d 1047, 1048 (Fla. 2d DCA 2016); Perrin v. Perrin, 795 So. 2d 1023, 1024 (Fla. 2d DCA 2001).  On remand, the trial court shall reconsider the Former Husband's request for attorney's fees and make findings regarding the Former Husband's need for and the Former Wife's ability to pay an award of attorney's fees.

Affirmed in part, reversed in part, and remanded with directions.

LUCAS and ATKINSON, JJ., Concur.